William M. Simpich #106672
Attorney at Law
528 Grand Avenue
Oakland, CA 94610
Telephone: (415) 542-6809
bsimpich@gmail.com

Lawrence P. Schnapf
Schnapf LLC
55 E.87th Street #8N
New York, New York 10128
Telephone: (212) 876-3189
Larry@schnapflaw.com

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MARY FERRELL FOUNDATION, INC.; JOSIAH THOMPSON; and GARY AGUILAR, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, <br><br> Defendant. | No. 3:22-cv-06176-RS <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT** <br><br> Date: September 21, 2023 <br> Time: 1:30 pm <br> Dept: Hon. Richard Seeborg |

///

///

*Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Leave to File a Third Amended Complaint*
*Case No. 3:22-cv-06176-RS*

0

**PROCEDURAL HISTORY**

The original complaint in this action was filed on October 19, 2022. The First Amended Complaint was filed on January 5, 2023. Defendants filed a Motion to Dismiss on February 6, 2023.

Following a stipulation by the parties, the Second Amended Complaint was filed on April 10, 2023. Defendants filed another Motion to Dismiss on May 1, 2023. The court issued its order dismissing some causes of action and accepting other causes of action on July 14, 2023. Defendant Joseph R. Biden was dismissed without leave to amend. The third and fourth causes of action were denied, but the court was silent on whether leave to amend was granted or denied.

Plaintiffs have stipulated that the Defendant NARA need not file an Answer until August 28, 2023, and affirm in this document that they will not require the Defendant to file an Answer until after the issues involving the proposed filing of this Third Amended Complaint are fully resolved.

**ARGUMENT**

The new contentions are detailed in the Declaration of William M. Simpich and can be summarized as follows:

**One,** the Plaintiffs have detailed the missing, destroyed and removed records that merit an investigation by NARA to various agencies in an attempt to locate said records that fit within the standards of 44 USC Section 2905. See paragraphs 129-149 as well as the Federal Records Act (Third Cause of Action) of the proposed new complaint.

**Two,** the Plaintiffs have detailed the reasons why the distinctions made in the proposed Third Amended Complaint that clarify the less stringent standards contained in the Transparency

*Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Leave to File a Third Amended Complaint*
*Case No. 3:22-cv-06176-RS*

1

Plans and the need for an "identifiable basis" for the withholding of all of the names and identities in the postponed documents.

The JFK Records Act must be construed as a remedial statute, designed to release as much information as soon as possible. Furthermore, Section 11 of the JFK Records Act makes it clear that no executive order can override the JFK Records Act in regards to the disclosure of documents.

It is not reasonable to equate 5(g)(2)(D) as an opportunity to withhold documents that should have been released prior to 2017, nor to withhold the reasons for the failure to release the names and identities of the individuals cited in these documents for 100 years after the birth of these individuals in the face of the public interest to reveal these names and identities. These names and identities constitute a far smaller subset than the national security concerns addressed by CIA, DOD, Department of State and the other agencies in their lists of transparency events. The court should allow the amendment of the complaint on this limited set of facts, which furthers the causes of justice and historical accuracy – and this remedial statute - when investigators have the opportunity to interview these elderly witnesses before their departure from the Earth. See paragraphs 82-82d as well as the proposed Second Cause of Action in the proposed new complaint.

The court's decision indicates that "periodic review" between NARA and the agencies was conducted until 2017, when "the President's power further to postpone record releases is described in a subsequent provision, JFK Act Section 5(g)(2)(D), which was a power *seemingly* meant to conclude the periodic review process described in Sections 5(g)(2)(A)-(C)."

*Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Leave to File a Third Amended Complaint*
Case No. 3:22-cv-06176-RS

Plaintiffs respectfully state that "periodic review" between NARA and the agencies has been conducted right up to the present day.

Plaintiffs maintain that it cannot be that the purpose of the JFK Act was to reward agency delay by providing them with permission to engage in further delay without explanation to the American people under 5(g)(2)(D).

Section 5(g)(2)(D) imposes two obligations on the president to postpone records beyond the 25th anniversary of the JFK Act (October 24, 2017). The president is required to certify (i) the existence of an identifiable harm and (ii) that identified harm is of such gravity that it outweighs the public interest.

As the court said on page 14 of its order, the subparagraphs of section 5(g)(2) must be read in context. Subparagraph 5(g)(2)(B) require that "*All postponed assassination records determined to require continued postponement shall require an unclassified written description of the reason for such continued postponement*".

Thus, read in context, to postpone a record after October 24, 2017, the president has to issue the certifications required in 5(g)(2)(D)(i) and (ii) along with an explanation for the reason for the continued postponement required by 5(g)(2)(B. While the president's executive make the requisite certification of 5(g)(2)(D)(i), in none of his orders have ever explained to the American people how the "identifiable harm" is of such gravity that it outweighs the public interest in disclosure. Neither the president nor the agencies have explained how disclosing names of sources or informants with potential information about the events that happened 60 years ago outweigh the strong public interest in disclosure.

Plaintiffs also point out that subparagraphs 5(g)(2)(A) and (C) contain the phrase "periodic review" while that phrase is absent from subparagraphs 5(g)(2)(B) and (D). When

*Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Leave to File a Third Amended Complaint*
*Case No. 3:22-cv-06176-RS*

3

"Congress includes a particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wooten*, 688 F.2d 941, 950 (CA4 1982)).

Thus, it should be clear that the obligation to provide an explanation to provide an unclassified of how the harm from disclosing name of persons with knowledge of 60 year old events involving the assassination poses harm of such gravity that it outweighs the public interest was not limited to the "periodic review" period.

Even if the court were to conclude that the period review period applies to subparagraphs 5(g)(2)(B) and (D), the fact is that both Presidents Trump and Biden have extended the period review period 4 times by operation of their executive orders. These orders established new periodic review periods.

**Three,** the added facts provided to the court regarding the findings by previous presidential and congressional investigations into the JFK case – these added facts illustrate that there is a strong probability that there was more than one shooter on 11/22/63.  See paragraph 8 in the proposed new complaint.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires". Fed. R. Civ. P. 15(a)(2). The district court has the discretion to decide whether to grant Plaintiff leave to amend. See *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.1982), vacated on other grounds, 459 U.S. 810 (1982). In its exercise of this discretion, the court applies Rule 15 to "facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Furthermore, the

court interprets the language for granting amendments under Rule 15 with "extreme liberality." *Id.*

### A. Under the Ninth Circuit Standard Plaintiff Should Be Granted Leave to Amend

When deciding whether to grant leave to amend, a court must consider: (1) whether the amendment was filed with undue delay; (2) whether the movant has requested the amendment in bad faith or as a dilatory tactic; (3) whether movant was allowed to make previous amendments which failed to correct deficiencies of the complaint; (4) whether the amendment will unduly prejudice the opposing party and; (5) whether the amendment is futile. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 US 178, 182 (1962)).

### B. The five factors are not considered equally.

Prejudice is the most important factor and is given the most weight. *Eminence*, 316 F.3d at 1052. Therefore, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* See also *Talwar v. Creative Labs, Inc.*, No. CV 05-3375, 2007 WL 1723609 (C.D. Cal. June 14, 2006) (finding the plaintiffs should be granted leave to amend because additional discovery would not unduly prejudice the defendant and the defendant did not make a strong enough showing of bad faith on the part of the plaintiffs or that the plaintiffs requested leave to amend as a dilatory tactic, despite the suspect timing of the filing).

The Ninth Circuit has also held that one of the five *Foman* factors alone is not sufficient to justify the denial of a request for leave to amend. The Ninth Circuit has found that undue delay alone "is insufficient to justify denying a motion to amend" and has "reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific

finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

In this case, Plaintiffs' amendment will not unduly prejudice Defendant because no Answer has been filed; no discovery has been conducted; no trial date has been set; and no case management has been conducted as of this date.

Regarding the factor of undue delay, Plaintiffs filed this request for leave to amend in a prompt manner. Plaintiffs filed the proposed amendment in the following fashion: The court order was issued on July 14, 2023. This proposed amendment was filed on August 14, as soon as the order could be fairly analyzed and an appropriate response could be given.

Regarding the factor of alleged bad faith or for dilatory reasons: Plaintiffs believe that the court's order does not reflect the fact that the President's executive order sets *less stringent standards then the JFK Act*. Nor did the court address the area of determining the need to release the identities of individuals before 100 years has expired.

Regarding the factor of prior amendments to the pleadings: The First Amended Complaint was filed in response to the Defendants' request for the December 2022 executive order to be included in the complaint, which was filed in October 2022 and only included the December 2021 executive order. The Second Amended Complaint was filed to address issues raised by the defense in its initial Motion to Dismiss, in order to promote judicial economy.

The court issued the first order on the pleadings on July 14, 2023. The court order was silent about whether the third and fourth causes of action were denied without leave to amend or with leave to amend. In such a situation in *Wisdom v. First Midwest Bank*, 167 F.3d 402, 509 (8th Cir. 1999), the judge's silence led to the motion being granted.

///

*Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Leave to File a Third Amended Complaint*
*Case No. 3:22-cv-06176-RS*

6

Plaintiffs have reviewed the court's order regarding the breadth of Section 5(g)(2)(D) of the JFK Act, and, as stated above, believe that the court has not taken into consideration the mandate in 5(g)(2)(D) that there must be an "identifiable basis", specifically in the context of whether the names and identities of individuals must be released. Plaintiffs request that the order be clarified in this respect if necessary.

Regarding the factor of whether Plaintiffs' proposed amendment is futile: Plaintiffs believe that it is founded on solid facts and applicable law. Plaintiffs also believe that the court will appreciate the distinctions made in the proposed Third Amended Complaint that clarify the less stringent standards contained in the Transparency Plans and the need for an "identifiable basis" for the withholding of all of the names and identities, the list of documents that merit an investigation and review by NARA, and the added facts provided to the court regarding the findings by previous presidential and congressional investigations into the JFK case – these added facts illustrate that there is a strong probability that there was more than one shooter on 11/22/63. Thus, a broader set of documents must be construed as "assassination records".

**CONCLUSION**

Plaintiffs should be granted leave to file the proposed Third Amended Complaint.

Dated:   August 14, 2023

\_\_/s/_____
William M. Simpich
Lawrence P. Schnapf
Attorneys for Plaintiffs