William M. Simpich #106672
Attorney at Law
528 Grand Avenue
Oakland, CA 94610
Telephone: (415) 542-6809
bsimpich@gmail.com

Lawrence P. Schnapf
Schnapf LLC
55 E.87th Street #8N
New York, New York 10128
Telephone: (212) 876-3189
Larry@schnapflaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE MARY FERRELL FOUNDATION, INC.; JOSIAH THOMPSON; and GARY AGUILAR,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>Defendant. | No. 3:22-cv-06176-RS<br><br>**PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**<br><br>Date: September 21, 2023<br>Time: 1:30 pm<br>Dept: Hon. Richard Seeborg |

///

**PROCEDURAL HISTORY**

The original complaint in this action was filed on October 19, 2022. The First Amended Complaint was filed on January 5, 2023. Defendants filed a Motion to Dismiss on February 6, 2023.

Following a stipulation by the parties, the Second Amended Complaint was filed on April 10, 2023. Defendants filed another Motion to Dismiss on May 1, 2023. The court issued its ruling dismissing some causes of action and accepting other causes of action on July 14, 2023. Defendant Joseph R. Biden was dismissed without leave to amend. The third and fourth causes of action were denied, but the court was silent on whether leave to amend was granted or denied.

Plaintiffs have stipulated that the Defendant NARA need not file an Answer until August 28, 2023, and affirm in this document that they will not require the Defendant to file an Answer until after the issues involving the proposed filing of this Third Amended Complaint are fully resolved.

Plaintiffs and Defendant NARA had a productive face-to-face meeting on Thursday, August 17. Following that meeting, Plaintiffs submit this amended brief.

**ARGUMENT**

The new contentions are detailed in the Declaration of William M. Simpich and can be summarized as follows:

**1. More contentions re missing documents providing grounds for "2905 relief":**

The Plaintiffs have detailed the missing, destroyed and removed records that merit an investigation by NARA to various agencies in an attempt to locate said records that fit within the standards of 44 USC Section 2905.

See paragraphs 129-149 as well as the Federal Records Act cause of action of the proposed new complaint.

NARA has been given notice through this document, previous notices, and documents in their possession of these documents that provide proper grounds for 2905 relief – grounds for NARA to give notice to these agencies of these missing documents; grounds to refer these documents to the Attorney General if the agencies do not comply; and grounds to provide notice of this situation to Congress.

Three of these missing and destroyed documents summarize the depth of the problem: One of them is an audiotape of a voice identifying himself as "Lee Harvey Oswald" to the Soviet Embassy in the period from Sept. 27-October 1, 1963 – and that audiotape was listened to by two Warren Commission staffers in the months after November 22, 1963; another version of this Oswald audiotape was allegedly the tape listed as among the documents recovered by the CIA from Mexico City Chief of Station Win Scott's safe after his death in the early 1970s; a third document is an 11/23/63 audiotape of J. Edgar Hoover and Lyndon B. Johnson discussing Hoover's report that it was not Oswald's voice on the aforementioned Mexico City tape.

Other "black holes" in the documents pose different challenges. One "black hole" consists of virtually the entire set of the records of the anti-Castro intelligence service during the 1960s known as the AMOTs. Another is the entire "Volume 5" from Mr. Oswald's security file at the CIA. Yet another is .8 cubic feet of documents obtained from the Office of Naval Intelligence placed in NARA's custody and now "missing" according to a NARA memo.

**2. The Transparency Plans cannot contain less stringent standards than the Act**

The Third Amended Complaint alleges that names and identities in the postponed

documents are based on less stringent standards contained in the Transparency Plans, which avoids the Act's mandate for a an "identifiable basis" to withhold these names and identities.

The JFK Records Act is a remedial statute designed to release as much information as soon as possible. Section 11 of the JFK Records Act operates as a sledgehammer to prevent any statute or judicial decision – much less an executive order such as the Transparency Plans - from overriding the Act in regard to the disclosure of documents.

In alignment with the 7/14/23 ruling, Plaintiffs' new complaint does not challenge the agencies' claims for postponements based on national security, nuclear functions, diplomatic relations and related bases. However, the 7/14/23 ruling provides no basis to permit Section 5(g)(2)(D) to be used to withhold the names and identities of the individuals cited in these documents for 100 years after the birth of these individuals in the face of the public interest to reveal these names and identities. If revelation of any of these identities provide "identifiable harm" under 5(g)(2)(D), that harm must be revealed in an unclassified written description.

The "identifiable harm" raised by revelation in these particular names and identities are not addressed in the President's Transparency Plans nor in the concerns addressed by CIA, DOD, Department of State and the other agencies in their lists of transparency events. Nor are all of these individuals cited in the postponed documents agency officers – many of them are informants, sources, assets, or persons not utilized by government authorities.

The court should allow the amendment of the complaint regarding this claim, which furthers the causes of justice and historical accuracy – and this remedial statute – to enable investigators to have the opportunity to interview these elderly witnesses before their departure from the Earth. If necessary, this motion should be construed as a request to clarify the order

pursuant to FRCP 59 & 60. See paragraphs 82-82d as well as the proposed Second Cause of Action in the proposed new complaint.

### 3. NARA retains a duty to obtain relevant documents pursuant to the JFK Records Act

A plain reading of the 7/14/23 ruling indicates that the power of "periodic review" described in Section 5(g)(2)(A) between NARA and the agencies was conducted until at least 2017, when "the President's power further to postpone record releases is described in a subsequent provision, JFK Act Section 5(g)(2)(D), which was a power *seemingly* meant to conclude the periodic review process described in Sections 5(g)(2)(A)-(C)." Docket #68, 14:1-4.

First, Plaintiffs respectfully state that "periodic review" between NARA and the agencies has been conducted right up to the present day, and that the court's ruling should not be construed to mean that NARA had no power to conduct periodic review after 2017. A fair reading of the order indicates that the Court left that issue open for further interpretation.

Secondly, Plaintiffs respectfully state that NARA assumed ARRB's power to identify and review additional assassination records from agencies, pursuant to 12(b), 5(g)(2)(A), 5(C)(2)(F) and 7(j)(1)(C). The basis for this power is found in Section 12(b) stating that "the remaining provisions of this Act shall continue in effect until such time as the Archivist certifies to the President and the Congress that all assassination records have been made available to the public in accordance with this Act." The duty to find additional assassination records did not end in 1998 with the ARRB. It falls to the Archivist. It is the only reasonable reading of this remedial statute.

The exception to this power is Section 12(a) stating that "the provisions of this Act that pertain to the appointment and operations of the Review Board shall cease to be effective when the Review Board and its terms of its members have terminated…" This exception is not applicable as to the powers of the Board that are not construed as "appointment and operations". The function of finding additional assassination records remains as a duty in the Act. No other entity could get that done except NARA. The duty falls on the Archivist, pursuant to 12(a).

The court has ruled that the notion that NARA has assumed all the legal duties of the ARRB "*is without merit. NARA and the ARRB are two distinct entities, separately referenced in the JFK Act and tasked with separate statutory functions.*" Docket #68, 13:3-4. However, this ruling must be aligned with 5(g)(2)(A), which states that "*a periodic review **shall** address the disclosure of additional assassination records in the Collection under the standards of this Act*." Like Section 12(a), this section provides additional support for the contention that the Archivist would assume the ministerial and non-discretionary duty to push for the disclosure of additional assassination records in this remedial statute.

For these reasons, it is reasonable to state that the powers conferred on NARA by 12(b) and 5(g)(2)(A) are to be utilized in the same fashion as the ARRB was charged to conduct its functions to obtain additional documents from agencies pursuant to 5(c)(2)(F) and 7(j)(1)(C). Otherwise, it would mean that NARA had exceeded its authority by the actions it has taken in seeking assassination documents from the agencies since 1998 – and that the JFK Act could not be used to obtain additional assassination documents after 1998.

**4. The unclassified written descriptions provided by the President do not include the existence of an identifiable harm for all of the names and identities being withheld**

Section 5(g)(2)(D) imposes two obligations on the president to postpone records beyond the 25th anniversary of the JFK Act (October 24, 2017). The president is required to certify (i) the existence of an identifiable harm and (ii) that identified harm is of such gravity that it outweighs the public interest.

As the court said on page 14 of its order, the subparagraphs of section 5(g)(2) must be read in context. Subparagraph 5(g)(2)(B) require that "*All postponed assassination records determined to require continued postponement shall require an unclassified written description of the reason for such continued postponement*".

Thus, read in context, to postpone a record after October 24, 2017, the president has to issue the certifications required in 5(g)(2)(D)(i) and (ii) along with an explanation for the reason for the continued postponement required by 5(g)(2)(B). While the president's executive orders make the requisite certification of 5(g)(2)(D)(i), none of his orders have ever explained to the American people how the "identifiable harm" is of such gravity that it outweighs the public interest in disclosure of particular names and identities. Neither the president nor the agencies have explained how disclosing names of particular officers, sources, informants or other individuals with potential information about the events that happened 60 years ago outweigh the strong public interest in disclosure.

Plaintiffs also point out that subparagraphs 5(g)(2)(A) and (C) contain the phrase "periodic review" while that phrase is absent from subparagraphs 5(g)(2)(B) and (D). When "Congress includes a particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wooten*, 688 F.2d 941, 950 (CA4 1982)).

Thus, it should be clear that the obligation to provide an explanation to provide an unclassified written description of how the harm from disclosing the identities of particular persons with knowledge of 60 year old events involving the assassination poses harm of such gravity that it outweighs the public interest was not limited to the "periodic review" period.

Even if the court were to conclude that the periodic review period applies to subparagraphs 5(g)(2)(B) and (D), the fact is that both Presidents Trump and Biden have extended the period review period 4 times by operation of their executive orders. These orders established new periodic review periods.

**5. The HSCA made a finding of a strong possibility of more than one shooter**

The proposed new complaint adds facts to the court regarding the findings by previous presidential and congressional investigations into the JFK case – these added facts illustrate that there is a strong probability that there was more than one shooter on 11/22/63. This, in turn, broadens the landscape of what is an "assassination record", which must be determined before the Archivist can make any certification that all assassination records have been provided. See paragraph 8 in the proposed new complaint.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires". Fed. R. Civ. P. 15(a)(2). The district court has the discretion to decide whether to grant Plaintiff leave to amend. See *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.1982), vacated on other grounds, 459 U.S. 810 (1982). In its exercise of this discretion, the court applies Rule 15 to "facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Furthermore, the

court interprets the language for granting amendments under Rule 15 with "extreme liberality." Id.

**6. 9th Circuit Standard for Leave to Amend Has Five Factors**

When deciding whether to grant leave to amend, a court must consider: (1) whether the amendment was filed with undue delay; (2) whether the movant has requested the amendment in bad faith or as a dilatory tactic; (3) whether movant was allowed to make previous amendments which failed to correct deficiencies of the complaint; (4) whether the amendment will unduly prejudice the opposing party and; (5) whether the amendment is futile. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 US 178, 182 (1962)).

**7. The five factors are not considered equally – & the defendant is not prejudiced**

Prejudice is the most important factor and is given the most weight. *Eminence*, 316 F.3d at 1052. Therefore, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. See also *Talwar v. Creative Labs, Inc.*, No. CV 05-3375, 2007 WL 1723609 (C.D. Cal. June 14, 2006) (finding the plaintiffs should be granted leave to amend because additional discovery would not unduly prejudice the defendant and the defendant did not make a strong enough showing of bad faith on the part of the plaintiffs or that the plaintiffs requested leave to amend as a dilatory tactic, despite the suspect timing of the filing).

The Ninth Circuit has also held that one of the five *Foman* factors alone is not sufficient to justify the denial of a request for leave to amend. The Ninth Circuit has found that undue delay alone "is insufficient to justify denying a motion to amend" and has "reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific

finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

In this case, Plaintiffs' amendment will not unduly prejudice Defendant because no Answer has been filed; no discovery has been conducted; no trial date has been set; and no case management has been conducted as of this date.

Regarding the factor of undue delay, Plaintiffs filed this request for leave to amend in a prompt manner. Plaintiffs filed the proposed amendment in the following fashion: The court order was issued on July 14, 2023. This proposed amendment was filed on August 14, as soon as the order could be fairly analyzed and an appropriate response could be given.

Regarding the factor of alleged bad faith or for dilatory reasons: Plaintiffs' review of the 7/14/23 ruling indicates that the court did not rule out the need to analyze whether an unclassified written description was necessary in order to postpone the release of the names and identities of individuals before 100 years has expired. "*NARA's withholding of the postponed records— is a discrete final agency action, but Plaintiffs fail to plead adequately it is arbitrary and capricious*." Plaintiffs have now pled it adequately – 5(g)(2)(D) does not allow the withholding of the records based on "names and identities". Such a basis is nowhere in the language of that clause of the statute.

Regarding the factor of prior amendments to the pleadings: The First Amended Complaint was filed in response to the Defendants' request for the December 2022 executive order to be included in the complaint, which was filed in October 2022 and only included the December 2021 executive order. The Second Amended Complaint was filed to address issues raised by the defense in its initial Motion to Dismiss, in order to promote judicial economy.

The court issued the first order on the pleadings on July 14, 2023. The court order was silent about whether the third and fourth causes of action were denied without leave to amend or with leave to amend. In such a situation in *Wisdom v. First Midwest Bank*, 167 F.3d 402, 509 (8th Cir. 1999), the judge's silence led to the motion being granted.

Plaintiffs have reviewed the court's order regarding the breadth of Section 5(g)(2)(D) of the JFK Act, and, as stated above, believe that the court has not taken into consideration the mandate in 5(g)(2)(D) that there must be an "identifiable basis", specifically in the context of whether the names and identities of individuals must be released. Plaintiffs request that the order be clarified in this respect if necessary, pursuant to FRCP 59 & 60.

Regarding the factor of whether Plaintiffs' proposed amendment is futile: Plaintiffs believe that it is founded on solid facts and applicable law. Plaintiffs also believe that the court will appreciate the distinctions made in the proposed Third Amended Complaint that clarify the less stringent standards contained in the Transparency Plans and the need for an "identifiable basis" for the withholding of all of the names and identities, the list of documents that merit an investigation and review by NARA, and the added facts provided to the court regarding the findings by previous presidential and congressional investigations into the JFK case – these added facts illustrate that there is a strong probability that there was more than one shooter on 11/22/63. Thus, a broader set of documents must be construed as "assassination records".

**CONCLUSION**

Plaintiffs should be granted leave to file the proposed Third Amended Complaint.

Dated: August 17, 2023

__/s/____________________________
William M. Simpich
Lawrence P. Schnapf
Attorneys for Plaintiffs