UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FERRELL FOUNDATION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, et al.,<br><br>Defendants. | Case No. 22-cv-06176-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTIONS FOR INJUNCTIVE RELIEF** |

## I. INTRODUCTION

Plaintiffs the Mary Ferrell Foundation, Inc. ("MFF"), Josiah Thompson, and Gary Aguilar bring this action for declaratory relief, injunctive relief, and a writ of mandamus against Defendants President Joseph R. Biden and the National Archives and Records Administration ("NARA"). Plaintiffs argue that Defendants failed to fulfill their ministerial duties as required by the President John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Act"). In their Third Amended Complaint ("TAC"), Plaintiffs aver three claims against NARA: (1) NARA's actions are arbitrary, capricious, and contrary to the JFK Act in violation of the Administrative Procedure Act ("APA"); (2) an APA/mandamus claim seeking to compel NARA to take certain actions; and (3) declaratory judgment that NARA's actions violate the Federal Records Act ("FRA"). Plaintiffs have also filed several motions for preliminary injunctions or mandamus: the first, to set aside two of President Biden's postponement memoranda and for NARA to conduct a re-review of the remaining redacted assassination records under Section 3(10) of the JFK Act and Plaintiffs' other preferred standards; the second, to order NARA to collect all assassination records

under Section 12(b); and third, to order NARA publicly to disclose legislative records pursuant to the JFK Act. Defendants filed a motion to dismiss the TAC.[1] For the reasons discussed below, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiffs' motions for preliminary injunction are denied.

**II. BACKGROUND**

The factual history of this suit has been extensively reviewed previously. *See, e.g.*, Dkt. 68. In short, Congress enacted the JFK Act in 1992 to address public desire for information regarding President John F. Kennedy's tragic assassination. The JFK Act sought to create a collection of records held by the federal government related to President Kennedy's assassination ("assassination records") and sought expeditious disclosure of those records. JFK Act § 2(b)(2). The Act set a 25-year deadline for disclosure of all assassination records unless the President deemed that "continued postponement [of the records] is made necessary by an identifiable harm to military defense, intelligence operations, or conduct of foreign relations" that was "of such gravity that it outweigh[ed] the public interest in disclosure." JFK Act § 5(g)(2)(D). The Act established the Assassination Records Review Board ("ARRB"), an independent agency tasked with reviewing postponement requests. JFK Act § 7.

Since the 25-year deadline in October of 2017, then-President Trump and subsequently President Biden have collectively issued five postponement memoranda, invoking Section 5(g)(2)(D). In December 2022 and June 2023, President Biden continued the postponement of certain records and asserted that future release of these records would occur consistent with the Transparency Plans in two memoranda (the "Biden memoranda"). The Transparency Plans were created by federal agencies and detail what events or circumstances must occur or change to

---

[1] In the future, Plaintiffs must submit all the relevant documents in one filing on ECF by the deadline, unless ordered otherwise. Relevant documents include any declarations, tables of contents, and tables of authorities, which must be submitted as attachments to Plaintiffs' briefs, not as separate filings. Plaintiffs are also required to submit any proposed orders by the briefing deadline. The haphazard nature of Plaintiffs' filings makes it challenging for other parties and the court to follow Plaintiffs' briefing.

"trigger the public disclosure of currently postponed information by the National Declassification Center (NDC) at NARA."[2] Memorandum on Certification Regarding Disclosure of Information in Certain Records Related to the Assassination of President John F. Kennedy, 2023 Daily Comp. Pres. Doc. No. 592, p.2 (June 30, 2023) (hereinafter, "June 2023 Memo"). The June 2023 Memo was President Biden's "final certification" under the JFK Act. Pursuant to these memoranda, NARA has continued the postponement of certain records.

MFF is a 501(c)(3) nonprofit corporation that maintains a large, searchable database of records related to President John F. Kennedy's assassination. Josiah Thompson and Gary Aguilar are both dues-paying members of MFF. Defendants are President Biden, who is sued in his official capacity, and NARA, an independent agency in possession or control of the records Plaintiffs seek and is tasked with preserving certain federal government records, including those related to President John F. Kennedy's assassination. 44 U.S.C. § 2102. NARA acts through the Archivist of the United States (the "Archivist").

Plaintiffs previously filed a Second Amended Complaint ("SAC") asserting five claims for relief, two of which partly survived Defendants' motion to dismiss. In connection with their SAC, Plaintiffs also filed a motion for preliminary injunction, which was denied. These motions were resolved in a previous order granting in part and denying in part Defendants' motion to dismiss and denying Plaintiffs' motion for preliminary injunction, Dkt. 68 ("the July 14, 2023 Order"). Following the disposition of the SAC and connected motion for preliminary injunction, Plaintiffs moved for leave to file the TAC, which Defendants did not oppose. Before the court is (a) Defendant's motion to dismiss the TAC and (b) several motions for preliminary injunction filed by Plaintiffs.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

---

[2] For example, the CIA's Transparency Plan allows for the names of living CIA agents to be released only after the individual is deceased or his or her connection to the CIA has already been officially acknowledged.

1    A complaint must contain "a short and plain statement of the claim showing that the
2    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not
3    required, a complaint must have sufficient factual allegations to state a claim that is "plausible on
4    its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.
5    544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that
6    allows the court to draw the reasonable inference that the defendant is liable for the misconduct
7    alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer
8    possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task
9    requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

   A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the
complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal
theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See
Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and
citation omitted). When evaluating such a motion, the court must accept all material allegations in
the complaint as true and construe them in the light most favorable to the non-moving party. *In re
Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all
reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d
556, 561 (9th Cir. 1987).

**B. Motion for Preliminary Injunction**

To obtain a preliminary injunction, a plaintiff must show that (1) it is likely to succeed on the merits; (2) irreparable harm is likely, not merely possible; (3) the balance of hardships tips in its favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 129 S.Ct. 365, 367 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id*. The Ninth Circuit employs a sliding scale approach "where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 960, 968 (9th Cir. 2010) (internal quotations omitted).

# IV. DISCUSSION

## A. Motion to Dismiss

In the TAC, Plaintiffs plead several factual allegations that are substantially similar to those previously dismissed from the SAC in the July 14, 2023 Order. *See* Dkt. 68. To the extent, Plaintiffs have now raised additional facts, they are discussed below.

### i. Arbitrary-and-capricious claim

Plaintiffs aver that NARA has acted arbitrarily and capriciously in violation of the APA. 5 U.S.C. § 706(2)(A). A challenged action must be "final" and "discrete" to be reviewable under the APA. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiffs specifically challenge NARA's withholding of assassination records from disclosure based on the Biden memoranda, arguing that they violate the express terms of the JFK Act. Previously, this challenged action was determined to be a final, discrete agency action, but was not deemed to be arbitrary or capricious within the meaning of the statute because Section 5(g)(2)(D) offers the President substantial discretion to determine whether continued postponement of records disclosure is appropriate. NARA was accordingly found not to be acting arbitrarily or capriciously by implementing the Biden memoranda. *See* July 14, 2023 Order at 10.

Plaintiffs further argue that NARA's recommendations to the President prior to his Section 5(g)(2)(D) certifications are based on "watered-down" and "non-statutory" standards, and the Transparency Plans "contain less-stringent and non-statutory criteria" untethered to the standards outlined in Sections 6 and 9(d) of the JFK Act. As was held previously, these provisions of the JFK Act apply only to postponement after an initial determination by the ARRB, whereas Section 5(g)(2)(D) is a separate statutory provision that provides the President with postponement authority after the 25-year deadline. In the TAC, Plaintiffs once again incorrectly seek to cabin the President's authority to Sections 6 and 9(d), neglecting the distinct authority the JFK Act provides the President in Section 5(g)(2)(D). Even if this were not the case, however, NARA's recommendations to the President were not "final" agency action and therefore not reviewable under the APA. Similarly, Plaintiffs' argument that the Transparency Plans delegate the

President's power to make postponement decisions to NARA and the agencies in violation of the JFK Act is unavailing. The July 14, 2023 Order explained that it was the President's decision that ultimately created the legal consequences of postponing the records, not NARA's mere recommendations. Since the Plaintiffs are unable to aver a plausible arbitrary and capricious claim after having had another opportunity to do so, this claim is dismissed without further leave to amend.

        ii.     APA/mandamus claim

Plaintiffs have, for the most part, replicated in the TAC the APA/mandamus claim that was originally raised in the SAC. The APA permits a court to "compel agency action unlawfully withheld or unreasonably delayed" so long as "there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." 5 U.S.C. § 706(1); *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021) (citation omitted). The July 14, 2023 Order upheld Plaintiffs' APA/mandamus claim brought in the SAC in part, but Plaintiffs have now sought to expand the factual allegations therein. Specifically, Plaintiffs seek to compel NARA to perform certain ministerial, non-discretionary duties including: (1) maintaining a central directory of identification aids for each assassination record; (2) releasing assassination records originated by the legislative branch (the "legislative branch records"); (3) ensuring that the release of the names of individuals in the assassination records it not postponed but for "clear and convincing evidence" of "substantial risk of harm" to the individual upon disclosure pursuant to Section 6(2); (4) completing outstanding assassination records searches until all assassination records have been obtained pursuant to Section 12; (5) conducting periodic reviews of the postponed releases per Section 9(d), on the grounds that the July 14, 2023 Order did not reach a final ruling on that issue.[3] The first two duties averred by Plaintiffs were found cognizable in the

---

[3] It is unclear, from a plain reading of the TAC, whether Plaintiffs did, in fact, plead in their second claim that NARA has a duty to complete outstanding assassination records searches until all such records have been obtained prior to terminating the Act pursuant to Section 12 or to conduct periodic reviews under Section 9(d). Neither of these allegations are explicitly listed in the second claim as NARA's duties but are raised elsewhere in the TAC. Since all factual allegations in the TAC were incorporated in the second claim, however, the Court will consider

ORDER ON MOTION TO DISMISS TAC, MOTIONS FOR PRELIMINARY INJUNCTIONS
CASE NO. 22-cv-06176-RS

6

1    July 14, 2023 Order and Defendants do not challenge them. Instead, Defendant argues the

2    remaining allegations fail to state a claim because they no more than recast Plaintiffs' arbitrary-

3    and-capricious claim.

4          Plaintiffs invoke Section 6(2) to argue that NARA is obligated to release the individual

5    names of agents barring any clear and convincing evidence of substantial risk of harm. As stated

6    previously, Section 6 and Section 5(g)(2)(D) are distinct statutory grounds for postponement.

7    Plaintiffs repeated attempts to blur the lines between the two are unavailing. The president's broad

8    discretion under Section 5(g)(2)(D) allows him to use any criteria for postponement, as long as the

9    5(g)(2)(D) statutory criteria are identified in his certification, which they were. *See* the Biden

10   Memoranda.

11         Next, Plaintiffs assert that Section 12 requires NARA to obtain all outstanding

12   assassination records prior to terminating the JFK Act. Despite Plaintiffs' contention otherwise,

13   this allegation is essentially congruent to Plaintiffs' SAC, where Plaintiffs sought to compel

14   NARA to follow up on outstanding ARRB search requests as the alleged "successor in function"

15   of the ARRB. Section 12(b) of the JFK Act states that, other than the provisions of the JFK Act

16   pertaining to appointment and operation of the ARRB, "[t]he remaining provisions of this Act

17   shall continue in effect until such time as the Archivist certifies to the President and the Congress

18   that all assassination records have been made available to the public in accordance with this Act."

19   According to Plaintiffs, this imposes on NARA the duty to complete any outstanding search

20   requests and to conduct new searches for assassination records. However, the JFK Act levies no

21   command on NARA to conduct such a search. Plaintiff argues that NARA is a successor in

22   function to the ARRB, which dissolved in September 1998 following the issuance of its Final

23   Report. The July 14, 2023 Order already explained that NARA and the ARRB are two distinct

24   entities and any legal duties formerly tasked to the ARRB cannot be legally assumed by NARA or

---

these arguments, which are discussed more extensively by Plaintiffs in their Opposition to Defendants' Motion to Dismiss. In the future, Plaintiffs must clearly organize their allegations or points in the relevant subsections.

any other executive agency.

Plaintiffs finally argue that Section 9(d) imposes on NARA a duty to conduct periodic reviews of the assassination records postponed by the President. Plaintiffs rely on the language in Section 9(d)(2), specifically, which states that any executive branch record postponed by the President shall be subject to periodic review. Section 9 applies to records reviewed by the ARRB, and Section 9(d)(1) grants the President the sole authority to postpone or disclose assassination records held by the executive branch following an initial determination by the ARRB and based on the standards set forth in Section 6. As discussed above, Section 5(g)(2)(D) is a *distinct* authority the President may invoke to postpone assassination records, which need not be based on the Section 6 standards and may utilize the Transparency Plans so long as the criteria in Section 5(g)(2)(D) are met, which they are. Plaintiffs' argument that the Transparency Plans lack periodic reviews and that Defendants actions therefore violate the JFK Act is unavailing. The periodic review procedure outlined in Section 9(d)(2) does not apply to the President's Section 5(g)(2)(D) authority.

Section 5(g) is also inapplicable as a means to compel NARA to conduct periodic reviews. Section 5(g)(1) imposes on the "originating agency" and the Archivist the duty to conduct periodic reviews of the postponed releases "consistent with the recommendations of the Review Board under section 9(c)(3)." JFK Act § 9(g)(1). Section 9(c)(3), in turn, applies to records postponed pursuant to the standards in Section 6, which is inapplicable here. Plaintiffs have consequently failed to expand their APA/mandamus claim, and the second claim is dismissed except as to Plaintiffs' claims that NARA failed to maintain identification aids and to release legislative records.

    iii.    FRA claim

Plaintiffs assert that NARA has violated the FRA by failing to request that the Attorney General initiate an action, or seek other legal redress, against agencies identified by the ARRB who are allegedly destroying, losing, or removing assassination records "The [FRA] is a collection of statutes governing the creation, management, and disposal of records by federal agencies."

*Bioscience Advisors, Inc. v. U.S. S.E.C.*, No. 21-cv-00866-HSG, 2023 WL 163144 (N.D. Cal. Jan. 11, 2023) (citation omitted). Under the FRA, if the Archivist learns of "any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records" in an agency's custody, the Archivist must notify the head of that agency and "assist [them] in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." 44 U.S.C. § 2905(a). If the agency head fails to initiate an action for recovery of records or other redress within a reasonable amount of time, the Archivist "shall request the Attorney General to initiate such an action." *Id*. The July 14, 2023 Order upheld Plaintiffs' FRA claim in the SAC except to the extent it referenced NARA's failure to pursue outstanding record searches. In the TAC, Plaintiffs seek an injunctive order to compel NARA to request the Attorney General to initiate an action for recovery of the assassination records unlawfully removed, or to seek other legal remedies to recover the records. Defendants argue that this claim should be dismissed because Plaintiffs lack standing to obtain relief for destroyed records and because Plaintiffs seek to compel NARA to request the Attorney General to seek records that are not only removed or destroyed, but "missing," a category of records Defendants argue are not in Section 2905(a).

As to the argument that Plaintiffs lack standing to pursue the portion of their claim that seeks redress by the Attorney General for destroyed records, Defendants contend a favorable ruling in this action would provide no redress. In order to have standing, a plaintiff must show that they have suffered an injury-in-fact that is concrete and actual, caused by the conduct complained about, and a favorable decision is likely to redress the injury at issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the FRA context, Plaintiffs must show that "there is a substantial likelihood the Attorney General could find some [federal records]," but the government bears the burden of showing "fatal loss" of the records at issue to establish mootness. *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 234 (D.D.C. 2018) ("[T]he difference between [the 'fatal loss'] standard—set forth in the mootness context—and the appropriate standard in the standing context is almost inconsequential.") Defendants argue that Plaintiffs have failed to allege

1  any means to undo the supposed destruction of records, so referral to the Attorney General would
2  serve no purpose. However, Defendants, not Plaintiffs, have the burden of showing that the
3  records at issue are fatally lost or "permanently unrecoverable," and they have not done so.
4  *Citizens for Resp. & Ethics in Wash. v. U.S. S.E.C.*, 916 F. Supp. 2d 141,148 (D.D.C. 2013).
5  Plaintiffs suggest that there are numerous ways a "destroyed" record may be recovered, including,
6  for example, if the agency saved a computerized version of such a record, an option Defendants do
7  not foreclose. Consequently, Plaintiffs have sufficiently plead that a favorable decision is likely to
8  redress the complained-about injury caused by Defendants actions.

9  Defendants next argue that Plaintiffs fail to state a claim under the FRA as to "missing"
10 records because this claim is a repackaged version of Plaintiffs' failed claim, initially brought in
11 the SAC, which sought to compel NARA to pursue outstanding record searches. The July 14,
12 2023 Order dismissed this portion of Plaintiffs' claim because the FRA imposes no independent
13 obligation on NARA to conduct those searches. Plaintiffs' attempt to conflate "removed"
14 documents and "missing" documents is unconvincing. Accordingly, the motion to dismiss the
15 third claim is denied except to the extent it seeks to compel NARA to pursue outstanding record
16 searches and pursue "missing" records.

### B.  Motions for Preliminary Injunction

Plaintiffs have filed three motions for injunctive relief, seeking preliminary injunctions: (1) to set aside the Biden memoranda and for NARA to conduct a re-review of the remaining redacted assassination records under Section 3(10) of the JFK Act and Plaintiffs' other preferred standards; (2) to instruct NARA to collect all remaining assassination records before the Archivist certifies that "all assassination records have been made available to the public in accordance with the Act," JFK Act § 12(b); and (3) for NARA publicly to disclose legislative records pursuant to the JFK Act. All three of Plaintiffs motions are denied. The first motion, which seeks to set aside the Biden memoranda, fails because Plaintiffs are unable to show they are likely to succeed on the merits. Indeed, that motion consists almost entirely of a recitation of Plaintiffs' arbitrary and capricious claim, which is dismissed from the TAC. Plaintiffs' second motion, which seeks to compel NARA

1    to pursue outstanding searches prior to termination of the JFK Act, is similarly deficient because
2    Plaintiffs are again unable to show that they are likely to succeed on the merits as the substantive
3    claim has previously been found wanting. Section 12(b) only maintains the provisions of the JFK
4    Act inapplicable to the ARRB after its termination, and does not impose an independent duty on
5    NARA to collect all assassination records. Plaintiffs' third motion fares no better because
6    Plaintiffs are unable to show they will suffer irreparable injury should their motion be denied.
7    Plaintiffs' general argument that "witnesses are dying" is not sufficient to move the needle, as the
8    records Plaintiffs seek have been withheld for decades. Furthermore, the national security
9    concerns raised by Defendants considerably tip the balance of hardships in Defendant's favor.

## V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted as to Claim 1. Defendants' motion is also granted as to Claim 2, except to the portions of Claim 2 concerning the legislative records and NARA's maintenance of the identification aids. Defendants' motion to dismiss is denied as to Claim 3, except as to the portions regarding the "missing" records and NARA's duty to complete outstanding record searches. Defendant President Biden, who is named as a defendant and in the caption of the TAC, is also dismissed as Plaintiffs have failed to aver any claims against him and the July 14, 2023 Order already dismissed him without leave to amend. Plaintiffs have been afforded multiple opportunities to amend and, except for the surviving claims, have failed to aver claims with cognizable legal theories, so further leave to amend their complaint is not warranted. Plaintiffs' various motions for injunctive relief are also denied.

**IT IS SO ORDERED**.

Dated: January 18, 2024

_____
RICHARD SEEBORG
Chief United States District Judge