James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| THE MARY FERRELL FOUNDATION, INC., et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>　　　　　　　Defendant. | Case No. 3:22-cv-06176-RS<br><br>**DEFENDANT'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: February 12, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

A.     Plaintiffs' APA claim for the release of legislative records is moot. ................................. 1

B.     NARA is entitled to summary judgment on the remainder of the Federal Records Act claim, if it is not dismissed. ................................................................................................ 2

       i.     Plaintiffs' Federal Record Act claim is not justiciable. ........................................... 4

       ii.     Plaintiffs' claim is brought directly under the Federal Records Act, which does not provide a cause of action. ................................................................................. 6

       iii.     Even if Plaintiffs have alleged a justiciable Federal Records Act claim, their claim fails on the merits. .......................................................................................... 8

C.     Plaintiffs are not entitled to summary judgment on their APA claim regarding the Central Directory. ............................................................................................................. 10

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Bush*,
  924 F.2d 282 (D.C. Cir. 1991) .................................................................................................. 7

*Barrios Garcia v. DHS*,
  25 F.4th 430 (6th Cir. 2022) .................................................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 8

*Bioscience Advisors, Inc. v. SEC*,
  2023 WL 163144 (N.D. Cal. Jan. 11, 2023) ........................................................................... 10

*Cause of Action Inst. v. Pompeo*,
  319 F. Supp. 3d 230 (D.D.C. 2018) .................................................................................. 4, 5, 6

*Citizens for Resp. & Ethics in Wash. v. DHS*,
  592 F. Supp. 2d 111 (D.D.C. 2009) .......................................................................................... 7

*Citizens for Resp. & Ethics in Wash. v. SEC*,
  916 F. Supp. 2d 141 (D.D.C. 2013) ............................................................................... 4, 6, 10

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................................................... 8

*Independence Mining Co. v. Babbitt*,
  105 F.3d 502 (9th Cir. 1997) .................................................................................................. 11

*In re A Community Voice*,
  878 F.3d 779 (9th Cir. 2017). .................................................................................................. 12

*Kissinger v. Reps. Comm. For Freedom of the Press*,
  445 U.S. 136 (1980) .............................................................................................................. 7, 8

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) .................................................................................................................. 11

*Telecomm. Research & Action v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ............................................................................................ 11, 12

**Statutes**

5 U.S.C. § 551(1) .................................................................................................................... 7

5 U.S.C. § 706(1) ................................................................................................ 1, 6, 7, 10, 11

5 U.S.C. § 706(2)(A) ............................................................................................................ 6, 7

44 U.S.C. § 2905(a) ................................................................................................. 2, 3, 8, 9, 10

44 U.S.C. § 3106(a) ......................................................................................................... 8, 9, 10

JFK Act, § 4(a)(2)(B) ............................................................................................................. 10

JFK Act, § 5(g)(2)(D) ........................................................................................................... 1, 2


**Executive Order**

Executive Order 14,176,
    90 Fed. Reg. 8641 (Jan. 30, 2025) ..................................................................................... 2

# INTRODUCTION

Three claims remain in this case about records related to the assassination of President John F. Kennedy. The first claim, which seeks the release of information previously withheld from legislative branch assassination records, is now moot: all of the information in question has been released. In the second claim, Plaintiffs would have NARA make a referral to the Attorney General under the Federal Records Act, regarding certain records destroyed by the Secret Service in 1995. The Court has previously explained that this claim would be moot if the records were fatally lost, which NARA has now established. And so the second claim is also moot, though NARA would prevail on the merits if the Court were to reach them. The last claim, brought under 5 U.S.C. § 706(1), asks the Court to order NARA to produce an updated directory of assassination records (which NARA is currently working to do). This claim fails as a matter of law, because NARA has not failed to act: it produced a directory as required by statute. And even if the Court applied the balancing test governing claims of unreasonable delay, it would not favor Plaintiffs' claim.

Although Plaintiffs' motion seeks to inject into this case material outside of the scope of their operative complaint, only these three claims are currently before the Court. Two of them are plainly non-justiciable, and Plaintiffs should not prevail on the third.

# ARGUMENT

**A.   Plaintiffs' APA claim for the release of legislative records is moot.**

Under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), Plaintiffs sought to compel NARA to release "legislative branch records." 3d Am. Compl. ¶ 164(b), ECF No. 77. In its motion for partial summary judgment, NARA explained that the release of some information contained in legislative branch records had been postponed by President Biden under Section 5(g)(2)(D) of the JFK Act. Def.'s Mot. at 6–12, ECF No. 117. Those legislative branch records, and the information withheld from them under the Section 5(g)(2)(D) postponement authority,

1

were described in the declaration of Rebecca Calcagno that accompanied NARA's motion. Decl. of Rebecca Calcagno ¶¶ 7–10, ECF No. 117-1.

In January 2025, President Trump issued Executive Order 14,176, in which he "determined that the continued redaction and withholding of information from records pertaining to the assassination of President John F. Kennedy is not consistent with the public interest." 90 Fed. Reg. 8641, 8641 (Jan. 30, 2025). In accordance with that Executive Order, all of the information previously withheld from legislative branch records under the Section 5(g)(2)(D) postponement authority has now been released to the public. Decl. of Richard C. Naylor ¶ 6.

Plaintiffs' claim for the release of those records is therefore moot, and should be dismissed. *See, e.g.*, *Coastal Envtl. Rights Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1057 (9th Cir. 2025) ("When it is impossible for a court to grant any effectual relief whatever to the prevailing party, there is nothing left for the court to do and the case becomes moot." (cleaned up)). Plaintiffs do not appear to argue the contrary. *See* Pls.' Mot. at 7–8, ECF No. 145 ("Defendant's motion regarding legislative branch records . . . is now moot, as the President has ordered their release in full and Plaintiffs believe that these records are in the process of being released . . . .").

**B.    NARA is entitled to summary judgment on the remainder of the Federal Records Act claim, if it is not dismissed.**

Plaintiffs' Federal Records Act claim centers on the "destruction, loss, or removal of Assassination Records." 3d Am. Compl. ¶ 172. Section 5(a)(2) of the JFK Act provides that "[n]o assassination record shall be destroyed, altered, or mutilated in any way." And under the Federal Records Act, NARA has a duty to "notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency," and to "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." 44 U.S.C.

2

1  § 2905(a). If "the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action," then NARA must "request the Attorney General to initiate such an action." *Id.*

The Third Amended Complaint only alleges a single specific instance of allegedly unlawful destruction, loss, or removal of assassination records: the Assassination Records Review Board (ARRB) "disclosed that the Secret Service destroyed certain files AFTER the ARRB had requested the records." 3d Am. Compl. ¶ 61(f) n.79 (citing ARRB, Final Report at 149 (Sept. 1998), *available at* https://www.archives.gov/files/research/jfk/review-board/report/arrb-final-report.pdf). On the page cited by Plaintiffs, the Final Report states that in 1995, after the passage of the JFK Act, "the Secret Service destroyed presidential protection survey reports for some of President Kennedy's trips in the fall of 1963." As NARA explained in its motion and the accompanying declaration of Judith Barnes, these paper records were irrevocably destroyed more than thirty years ago. Def.'s Mot. at 14; Decl. of Judith Barnes ¶¶ 5–8 ("Barnes Decl."), ECF No. 117-2.

Plaintiffs nonetheless allege that NARA has violated the Federal Records Act, 44 U.S.C. § 2905(a), because it has not "request[ed]" that "the Attorney General . . . initiate" "action . . . for the recovery" of these irrevocably destroyed records, or "for other redress provided by law." Their claim fails for several distinct reasons. *First*, this Court can offer no redress for the irrevocable destruction of records several decades ago. Plaintiffs therefore lack standing or, in the alternative, their claim is moot. *Second*, Plaintiffs have brought this claim directly under the Federal Records Act, which does not provide a cause of action. *Third*, and finally, Plaintiffs have not shown (or even alleged) that the Secret Service records in question were "unlawfully removed," and so NARA had no obligation to "assist the head of the agency in initiating action . . . for the recovery

3

of records unlawfully removed" or "other redress provided by law," nor to "request the Attorney General to initiate such an action." 44 U.S.C. § 2905(a).

        **i.    Plaintiffs' Federal Record Act claim is not justiciable.**

As the Court has previously recognized, a Federal Records Act claim that "seeks redress by the Attorney General for destroyed records" is not justiciable if "the records at issue are fatally lost." Order of Jan. 18, 2024 at 9–10 ("2024 Order"), ECF No. 107. The records at issue in Plaintiffs' Federal Records Act claim are the "presidential protection survey reports for some of President Kennedy's trips in the fall of 1963" which "the Secret Service destroyed" in 1995. ARRB Final Report at 149; *see* 3d Am. Compl. ¶ 61(f) n.79. As established by the declaration of Judith Barnes, those records are fatally lost— and have been for more than thirty years. Barnes Decl. ¶¶ 5–8, ECF No. 117-2; *see* Def.'s Mot. at 16 (explaining that "the records, which existed only in hard copy form, were pulped and converted into new paper products, and have long been permanently unrecoverable"). The Federal Records Act claim must therefore be dismissed for lack of subject matter jurisdiction. *See, e.g.*, *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 236 (D.D.C. 2018) ("With these federal records apparently fatally lost, I perceive no substantial likelihood that referral to the Attorney General will yield any fruit. This case is therefore moot, and must be dismissed." (footnote omitted)); *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 148 (D.D.C. 2013) ("*CREW*") (explaining that a lawsuit "to require agencies to seek the assistance of the Attorney General in recovering records that have been destroyed" would "likely be moot" if the records were "permanently unrecoverable").[1]

Plaintiffs' argument to the contrary boils down to the proposition that documents believed

---

[1] As NARA explained in its opening brief, the questions of fatal loss and redressability are better addressed through the doctrine of standing, where Plaintiffs bear the burden of proof, because the loss at issue here occurred long before this suit was filed. *See* Def.'s Mot. at 15.

to be lost sometimes turn up. Plaintiffs cite their attorney's declaration, which explains that a Secret Service agent retained copies of certain records from 1963, which NARA retrieved after the agent published a book discussing them. *See* Pls.' Mot. at 13–14 (citing "Simpich Declaration, paras. 1-6"); Decl. of William Simpich ¶¶ 1–6 ("Simpich Decl."), ECF No. 145-1. But Plaintiffs offer no reason to believe that other copies of destroyed Secret Service reports for President Kennedy's trips in the fall of 1963 are recoverable—and the mere possibility, however remote, that unknown copies of documents may exist somewhere in the world does not amount to a "*substantial likelihood* that referral to the Attorney General will yield any fruit." *Cause of Action*, 319 F. Supp. 3d at 236 (emphasis added).

Plaintiffs also seek to expand their Federal Records Act claim beyond the destruction of presidential protection survey reports, which is the only incident of unlawful destruction specifically alleged in their complaint. *See* 3d Am. Compl. ¶ 61(f). Plaintiffs again point the Court to their attorney's declaration. Pls.' Mot. at 12 (discussing "the Simpich Declaration, paragraph 7 and Exhibit 2"). But that portion of the declaration merely vouches for the authenticity of an attached email, *see* Simpich Decl. ¶ 7, ECF No. 145-1, which runs to thirteen pages on the docket, Simpich Decl., Ex. 2, ECF No. 145-1 at 8–20, and represents Plaintiffs' "attempt at a thorough list of destroyed and/or missing records identified by the ARRB Final Report," *id.* at 8. Plaintiffs "propose that the Archivist send this list to officials, clerks, and agencies who were included in communications regarding these records and find out if they can locate responsive records." *Id.* The email therefore plainly concerns Plaintiffs' twice-dismissed claims seeking "to compel NARA to pursue outstanding record searches and pursue 'missing' records." 2024 Order at 10; *see* Order of July 14, 2023 at 16 ("2023 Order"), ECF No. 68 (dismissing Federal Records Act claim "to the extent it references NARA's failure to pursue outstanding record searches"). Those claims were

5

properly excluded from this case and cannot be reintroduced now.

As NARA explained in its motion, "the records at issue" in Plaintiffs' Federal Records Act claim "were irrevocably destroyed three decades ago." Def.'s Mot. at 1. These paper records "were loaded into tractor trailers trucks and taken to the pulper. The paper was mixed with water so that the original records were not recoverable. The pulp was then made into new paper products for resale on the market." Barnes Decl. ¶ 7. The records are "fatally lost," *Cause of Action*, 319 F. Supp. 3d at 236, and "permanently unrecoverable," *CREW*, 916 F. Supp. 2d at 148.

Plaintiffs' claim seeking a referral to the Attorney General concerning the destruction of those records therefore is not justiciable, and Plaintiffs' bare speculation that copies of the records may survive somewhere is not enough to save it. Nor should the Court entertain Plaintiffs' latest attempt to compel NARA search for "missing" records. *See* Pls.' Mot. at 23 (asking the Court to "[o]rder NARA to seek additional documents"). Plaintiffs' Federal Records Act claim should be dismissed for lack of subject matter jurisdiction, whether on grounds of mootness or lack of standing.

### ii. Plaintiffs' claim is brought directly under the Federal Records Act, which does not provide a cause of action.

Plaintiffs' Third Amended Complaint included three claims. The first, captioned "Violation of APA," sought APA review under 5 U.S.C. § 706(2)(A), alleging that NARA had taken arbitrary, capricious, or otherwise unlawful actions. 3d Am. Compl. at 55 & ¶ 153. That claim was dismissed. 2024 Order at 5–6. The second claim, captioned "5 USC §701, et seq./mandamus re JFK Records Act," sought APA review under 5 U.S.C. § 706(1), alleging many failures to take actions required by law. 3d Am. Compl. at 57 & ¶¶ 161–66. Those claims were also dismissed, "except . . . Plaintiffs' claims that NARA failed to maintain identification aids and to release legislative records." 2024 Order at 8. The third claim, captioned "Violations of Federal

6

Records Act," does not mention the APA at all. *See* 3d Am. Compl. at 60 & ¶¶ 167–76. And, conversely, the two APA claims do not mention the Federal Records Act.

It is therefore clear that Plaintiffs' third claim is brought directly under the Federal Records Act, which does not confer a private right of action. *Kissinger v. Reps. Comm. For Freedom of the Press*, 445 U.S. 136, 148 (1980); *see Armstrong v. Bush*, 924 F.2d 282, 292 (D.C. Cir. 1991); *Citizens for Resp. & Ethics in Wash. v. DHS*, 592 F. Supp. 2d 111, 121 (D.D.C. 2009). As NARA explained in its motion, the Federal Records Act claim therefore "fails as a matter of law." Def.'s Mot. at 18.

Plaintiffs do not—and could not—argue that the Federal Records Act provides a right to sue. Instead, they contend that their Federal Records Act claim is also a failure-to-act claim brought under the APA pointing to "paragraphs 13, 151, and 153" and "the savings clause of paragraph 167" of the Third Amended Complaint. Pls.' Mot. at 15. Paragraph 13 appears in the section titled "Jurisdiction and Venue," and does not set out the basis of any claim. 3d Am. Compl. ¶ 13. Paragraphs 151 and 153 appear in Plaintiffs' first, dismissed claim, asserting that NARA is an agency within the meaning of 5 U.S.C. § 551(1), 3d Am. Compl. ¶ 151, and quoting the arbitrary-and-capricious standard of judicial review set out in 5 U.S.C. § 706(2)(A), 3d Am. Compl. ¶ 153. Finally, Paragraph 167, which is the first paragraph of the Federal Records Act claim, simply incorporates all the preceding paragraphs by reference. Nowhere in those four paragraphs—or anywhere else in the Third Amended Complaint—do Plaintiffs say what they now insist: that they are bringing a failure-to-act claim under the APA, 5 U.S.C. § 706(1), for violations of the Federal Records Act.

The Court need not, and should not, construe the Third Amended Complaint so liberally. Plaintiffs are represented by counsel and have had many opportunities to amend. The Federal

7

Rules of Civil Procedure entitle NARA to "fair notice of what the plaintiff's claim is." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*). Plaintiffs alleged a claim under the Federal Records Act, which fails as a matter of law. *Kissinger*, 445 U.S. at 148. NARA is therefore entitled to summary judgment in its favor.

### iii. Even if Plaintiffs have alleged a justiciable Federal Records Act claim, their claim fails on the merits.

In its motion, NARA argued that 44 U.S.C. § 2905(a) "does not unequivocally command NARA to request that the Attorney General initiate an action when records are allegedly destroyed." Def.'s Mot. at 18. Plaintiffs do not offer a meaningful response, beyond noting that they "disagree," Pls.' Mot. at 13, and so NARA will not recapitulate its argument here. But because the Court has previously analyzed NARA's obligations under 44 U.S.C. § 2905 by reference to § 3106, NARA wishes to emphasize the substantial congruencies between those provisions.

The obligations imposed on the Archivist in Section 2905 are mirrored by and intertwined with the obligations imposed on agency heads in Section 3106. First are reciprocal notice requirements. Agencies must "notify" NARA "of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a). And NARA, in turn, must "notify" an agency "of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency." *Id.* § 2905(a).

Next are shared obligations to initiate action through the Attorney General. An agency must "with the assistance of the Archivist . . . initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency." *Id.* § 3106(a). And NARA must equally "assist the head

8

of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." *Id.* § 2905(a).

Finally, both Section 2905 and Section 3106 give NARA the authority to make a referral to the Attorney General if an agency will not do so. Section 2905 provides that when "the head of the agency does not initiate an action for such recovery or other redress . . . , the Archivist shall request the Attorney General to initiate such an action." *Id.* And Section 3106 similarly provides that when "the head of a Federal agency does not initiate an action for such recovery or other redress . . . the Archivist shall request the Attorney General to initiate such an action." *Id.* § 3106(b).

Both Sections 2905 and 3106, then, require NARA to "request the Attorney General" to "initiate an action for . . . recovery or other redress," if the agency head does not do so. *Id.* §§ 2905(a), 3106(b). And Section 2905's requirement that NARA "assist the head of the agency in initiating action . . . for the recovery of records unlawfully removed and for other redress provided by law," *id.* § 2905(a), should inform the Court's interpretation of Section 3106, which requires that an agency head "with the assistance of the Archivist . . . initiate action . . . for the recovery of records," *id.* § 3106(a). Simply put, if NARA must "assist the head of the agency" with an action "for the recovery of records unlawfully removed and for other redress provided by law," *id.* § 2905(a), then the scope of the "action" that can be initiated by the agency "with the assistance of the Archivist" must be coextensive, *id.* § 3106(a).

The Court has previously suggested that "§ 2905(a) . . . seems to impose a broader referral obligation on the Archivist than § 3106(a) imposes on agency heads because of its inclusion of 'other redress provided by law.'" 2023 Order at 15. But the scope of the agency's obligation to make a referral to the Attorney General "with the assistance of the Archivist," *id.* § 3106(a), must

9

be the same as the Archivist's obligation to "assist the head of the agency" in making that referral, *id.* § 2905(a). The cases interpreting Section 3106's referral obligation as limited to the removal of records are therefore relevant to the Archivist's obligations under Section 2905. *See, e.g., Bioscience Advisors, Inc. v. SEC*, 2023 WL 163144, at *6 (N.D. Cal. Jan. 11, 2023) (noting that "[a] duty to involve the Attorney General is triggered only when the 'agency knows or has reason to believe' the records in question have been *removed* unlawfully" (emphasis in original) (quoting 44 U.S.C. § 3106(a)); *CREW*, 916 F. Supp. 2d at 146 (agreeing with the government that "the only time an agency has a mandatory enforcement duty is when records have been unlawfully removed—but not when they have been unlawfully destroyed" (alterations omitted)).

As NARA urged in its motion, the most sensible reading would hold that the Archivist and the agency must work together to "initiate action through the Attorney General," 44 U.S.C. § 3106(a), "for the recovery of records unlawfully removed and for other redress provided by law" *for the removal of those records*, *id.* § 2905(a). *See* Def.'s Mot. at 19–21. Because the destruction, rather than the removal, of records is at issue here, the Archivist had no obligation to make a referral to the Attorney General. NARA is therefore entitled to summary judgment on the Federal Records Act claim, if the Court reaches its merits.

C. **Plaintiffs are not entitled to summary judgment on their APA claim regarding the Central Directory.**

The JFK Act required NARA to establish "a central directory comprised of identification aids created for each record transmitted to the Archivist," § 4(a)(2)(B). Plaintiffs complain of "numerous inaccuracies in the central directory and the identification aids," Pls.' Mot. at 22, and seek to force NARA to correct them under 5 U.S.C. § 706(1), which empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." NARA is currently working to update its central directory, and Plaintiffs' motion for summary judgment should be denied.

10

1    First, and most fundamentally, NARA has in fact created a central directory, as Plaintiffs do not dispute. *See* Pls.' Mot at 22 (discussing the directory). Because "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency *failed to take* a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis added, other emphases deleted), and NARA has not failed to create a central directory, Plaintiffs' motion for summary judgment on this claim must be denied. Perhaps Plaintiffs could allege, and attempt to show, that the central directory was arbitrarily and capriciously inaccurate—but they have chosen to pursue a failure-to-act claim instead, and NARA has not failed to act.

And even if the Court strains to analyze Plaintiffs' central directory claim under Section 706(1), their motion for summary judgment must be denied. Because Congress did not "impose[] a date-certain deadline on agency action"—here, the publication of an accurate central directory—Plaintiffs would be asserting a claim for unreasonable delay, rather than action unlawfully withheld. *Barrios Garcia v. DHS*, 25 F.4th 430, 453 (6th Cir. 2022) (quoting *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999)). In the Ninth Circuit, unreasonable delay claims are analyzed under the six "so-called *TRAC* factors," which Plaintiffs do not even discuss. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *see Telecomm. Research & Action v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*").

Applying this six-factor balancing test, Plaintiffs are not entitled to summary judgment on their unreasonable delay claim. The first factor is that "the time agencies take to make decisions must be governed by a rule of reason." *TRAC*, 750 F.2d at 80 (cleaned up). Here, that rule of reason must encompass NARA's recent release of "previously withheld records that are part of the President John F. Kennedy Assassination Records Collection, as well as records transferred to NARA by the Federal Bureau of Investigation," ECF No. 141 at 1, which must now be added to

11

the central directory. It is not unreasonable for NARA to have failed to completely update its central directory less than a year after those records were transferred and released. The first *TRAC* factor, which is "[t]he most important," therefore favors NARA. *In re A Community Voice*, 878 F.3d 779, 786 (9th Cir. 2017).

As for the second factor, Congress has not "provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Turning to the third factor, "human health and welfare" are not "at stake" here. *Id.* Neither of these factors favor Plaintiffs' claim of unreasonable delay.

The fourth factor instructs the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* In this case, ordering NARA to expedite its completion of an updated central directory could impede its ability to perform other ongoing declassification and release projects, such as those pertaining to Amelia Earhart and unidentified anomalous phenomena.

The fifth factor is "the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. In this case, the interest of researchers and the public in an accurate, up-to-date central directory—though significant—is not so weighty as to justify summary judgment for Plaintiffs here, especially where NARA has been reasonably prioritizing the interest of researchers and the public in access to additional records regarding the assassinations of President John F. Kennedy, Senator Robert F. Kennedy, and the Reverend Dr. Martin Luther King, Jr., among other subjects of public interest. Finally, the sixth *TRAC* factor, which instructs courts that impropriety is not necessary for a finding of unreasonable delay, *see id.*, does not favor Plaintiffs either.

Taken together, the *TRAC* factors do not favor Plaintiffs' unreasonable delay claim, and they should therefore be denied summary judgment on that claim.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiffs' APA claim regarding legislative branch records on grounds of mootness. Plaintiffs' Federal Records Act claim is similarly non-justiciable, but if the Court reaches the merits it should enter summary judgment in favor of NARA. Finally, the Court should deny Plaintiffs' motion for summary judgment on their APA claim regarding the central directory.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: December 23, 2025

Def.'s Combined Opp. & Reply
Case No. 3:22-cv-6176-RS