UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FERRELL FOUNDATION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, et al., <br><br> Defendants. | Case No. 22-cv-06176-RS <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiffs the Mary Ferrell Foundation (MFF), Josiah Thompson, and Gary Aguilar sued the National Archives Records Administration (NARA),[1] averring that NARA failed to fulfill certain duties under the President John F. Kennedy Assassination Records Collection Act of 1992 (JFK Act), Pub. L. No. 102-526, 106 Stat. 3443 (1992), and the Federal Records Act of 1950 (FRA), Pub. L. No. 81-754, 64 Stat. 583. After amendments to the pleadings and motions practice, three claims remain. First, Plaintiffs ask for an order compelling NARA to release "legislative records" related to the assassination. Second, Plaintiffs request an order directing NARA to create a "uniform system" of "identification aid[s]" for the released documents, as required under section 5(d)(1)(B) of the JFK Act. Third, Plaintiffs seek an order directing NARA to make a referral to the Attorney General to recover allegedly destroyed records.

Plaintiffs now move for summary judgment on all remaining claims, and NARA cross-

---

[1] Plaintiffs originally sued former President Joseph R. Biden, but all claims against President Biden were dismissed. *See* Dkt. 68.

moves for partial summary judgment on claims one and three. Plaintiffs' motion is denied, and Defendant's motion is granted. Plaintiffs' first claim has been largely mooted by the recent release and unredaction of the legislative records. The redactions that remain were created by the documents' originating agency, and NARA is not obligated under the JFK Act to chase down the unredacted version of those documents. Plaintiffs' motion is denied as to the second claim because they have not demonstrated that NARA failed to create a uniform directory with identification aids. At best, they have raised a fact dispute as to whether NARA has created an effective directory, but that is not the claim they asserted. Finally, Plaintiffs lack standing to bring their third claim because their injury is not redressable. The evidence demonstrates that the records Plaintiffs seek have been fatally lost, making a referral to the Attorney General futile.

## I. BACKGROUND

The factual history of this lawsuit has been extensively documented in prior orders, *see e.g.*, Dkt. 68, 107, and it need not be recounted here. In brief, Plaintiffs are an organization and individual researchers interested in records related the assassination of former President John F. Kennedy. In 1992, Congress passed the JFK Act to facilitate the expeditious disclosure of assassination-related records held by the federal government. *See* JFK Act § 2(b)(2). The Act set a 25-year deadline to release the records, but it permitted the President to delay the release upon a finding that "postponement is made necessary by an identifiable harm to the military defense, intelligence operations, law enforcement, or conduct of foreign relations" and that "the identifiable harm is of such gravity that it outweighs the public interest in disclosure." *Id.* § 5(g)(2)(D).

On the eve of the expiration of the 25-year deadline, President Trump issued an Executive Order postponing the release of the remaining records. In all, Presidents Trump and Biden issued five postponement memoranda. However, shortly after taking office for the second time, President Trump issued Executive Order 14176, which "determined that the continued redaction and withholding of information from records pertaining to the assassination of President John F. Kennedy is not consistent with the public interest and the release of these records is long overdue." Consistent with that directive, the federal government began releasing the relevant

United States District Court
Northern District of California

records. *See* Dkt. 157, Naylor Decl., at 2.

Plaintiffs brought this suit in 2022. They twice amended their complaint, and Defendants (then, NARA and President Joseph Biden) moved to dismiss. All claims against President Biden were dismissed, as were most of Plaintiffs' claims against NARA. *See* Dkt. 68. However, three claims against NARA were permitted to proceed: (1) the claim (brought under the APA or alternatively in mandamus) challenging NARA's failure to release all legislative branch records after the expiration of the 25-year window in 2017; (2) the claim (also brought under the APA and/or in mandamus) that NARA breached its duties under the JFK Act by failing to publish a central directory of identification aids for the records; and (3) the claim that NARA violated the FRA by failing to request that the Attorney General take action after certain agencies allegedly destroyed assassination-related records. Plaintiffs amended their complaint a third time, but Defendants successfully moved to dismiss all claims Plaintiffs attempted to revive. *See* Dkt. 108. Consequently, only the three claims outlined above remain in the action.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The non-moving party must then offer evidence of such a caliber that 'a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient.'" *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

### III. DISCUSSION

A. <u>Failure to Release Legislative Records</u>

First, Plaintiffs bring a claim under the APA (or alternatively in mandamus) asking for an order directing NARA to release assassination records that originated in the legislative branch. In their view, the provision of the JFK Act that permits the President to postpone release of records applies only to those records that originated in the Executive Branch, making retention of any other assassination records after the 25-year deadline contrary to law. NARA initially argued that the JFK Act gives the President the power to postpone the release of *all* records, including those that originated in the legislative branch, but that argument was rejected as unsupported by the plain text of the statute and its legislative history. *See* Dkt. 68, at 12.

At summary judgment, NARA contends that this claim has been mooted by President Trump's intervening Executive Order. They have submitted a declaration from Richard Naylor, the Executive for Research Services at NARA, attesting that "all information previously withheld from 'legislative branch records' under the postponement authority [in] Section 5(g)(2)(D) of the JFK Act has now been released to the public." Naylor Decl., ¶ 6. In their cross-motion for summary judgment, Plaintiffs appeared to embrace that outcome. *See* Dkt. 145, at 7–8 ("Defendant's motion regarding legislative branch records . . . is now moot, as the President has ordered their release in full and Plaintiffs believe that these records are in the process of being released but the task has not yet been completed."). However, they walked that back in their reply. *See* Dkt. 160, at 5 ("Plaintiffs hoped that this issue would be rendered moot . . . but it is plain that NARA has failed to comply with either the JFK Records Act or the Executive Order.").[2]

Plaintiffs' attempt to show noncompliance, and thus a live controversy, is unpersuasive. In their reply, they provide links to various documents that contain redactions. *See* Dkt. 160, at 5–6.

---

[2] Notwithstanding Plaintiffs' repeated reference to Executive Order 14176, this claim remains cognizable only via the JFK Act. An executive order is simply a directive from the President to the Executive Branch. It does not create or modify private rights in a way that can give rise to legal actions.

ORDERING DENYING PLAINTIFFS' MSJ AND GRANTING NARA'S PARTIAL MSJ
CASE NO. 22-cv-06176-RS

4

However, those are the versions of the documents *on their own website*, not in the official NARA-maintained collection.[3] Plaintiffs have produced no evidence to rebut the declaration of Richard Naylor that all records previously postponed under section 5(g)(2)(D) of the JFK Act have now been released in full to the public. *See* Naylor Decl., at ¶ 6. Therefore, to the extent Plaintiffs' claim is predicated on redactions made pursuant to the section 5(g)(2)(D) postponements, it is moot.

Plaintiffs next assert that there are redactions remaining in the legislative records that were not made pursuant to a section 5(g)(2)(D) postponement, and they contend that NARA has a duty under section 4 of the JFK Act to chase down the unredacted version of those documents (which may or may not exist, somewhere in the annals of the federal government). That is far too aggressive a reading of the statute. Section 4(a) of the JFK Act tasks NARA with "ensur[ing] the physical integrity and original provenance of all records." That provision does not include a requirement to locate the unredacted version of records that other agencies send to it. "Physical integrity" is most naturally understood to refer to the actual constitution of the documents, which means NARA is responsible for making sure the documents it receives are not destroyed or damaged. "Original provenance," refers to the documents' originating source, which suggests, at most, that NARA is responsible for ensuring the documents' authenticity. *See* Provenance, Oxford English Dictionary Online ("The fact of coming from some particular source or quarter; origin, derivation").

Other provisions of the JFK Act confirm that the originating government agency, not NARA, is responsible for finding the original versions of assassination-related documents. Section 5(a), for instance, requires the original "Government office" to "identify and organize its records relating to the assassination of President John F. Kennedy and prepare them for transmission to the Archivist." Later in that provision, the statute tasks the originating government agency with

---

[3] For this reason, Plaintiffs' request to take judicial notice of the redactions in these records is denied.

ORDERING DENYING PLAINTIFFS' MSJ AND GRANTING NARA'S PARTIAL MSJ
CASE NO. 22-cv-06176-RS

5

"review[ing] . . . each assassination record in its custody or possession" to determine whether disclosure to the public is appropriate. NARA appears to play no role in that process.

Consequently, NARA is not the proper target for Plaintiffs' grievance about the remaining redactions. It did not put those redactions in the documents, and it has no obligation under the statute to get them out. Summary judgment in favor of NARA on this claim is therefore appropriate.

B. Failure to Publish Central Directory of Identification Aids

Section 4(a)(2)(B) of the JFK Act requires NARA to establish "a central directory of identification aids created for each [assassination] record transmitted to the Archivist." Plaintiffs bring an APA claim asserting that NARA fell down on this obligation. They aver there are "numerous inaccuracies in the central directory and the identification aids." Dkt. 145, at 22. Rex Bradford, the President of the Mary Ferrell Foundation, submitted a declaration in which he attests that the central directory "contains no identification aids for some agencies" and is missing aids for more than 500 records. Dkt. 34, Bradford Decl. ¶ 7–8.

Plaintiffs characterize this claim as sounding in a failure to act, *see* 5 U.S.C. § 706 (authorizing a suit to "compel agency action unlawfully withheld"), but that is too ambitious. NARA *has* acted. Implicit in Plaintiffs' averments is a concession that a central directory exists—the problem appears to be that it is not as fulsome as Plaintiffs would like. As NARA points out, Plaintiffs core grievance would be better ventilated through a claim that the directory was constructed in an arbitrary and capricious fashion, but they have instead chosen a much more aggressive position. That position is unavailing, so Plaintiffs' motion for summary judgment on this claim is denied.[4]

---

[4] In its motion for partial summary judgment, NARA noted that was "in the process of updating the central directory and intend[ed] to move for partial summary judgment [on this claim] after that process is complete." Dkt. 117, at 5 n. 4. NARA has not yet done so. Therefore, for the time being, this claim will proceed.

C.    Failure to Request Action by the Attorney General Related to Destroyed Records

Finally, Plaintiffs assert a claim under the Federal Records Act. That statute provides a procedure for addressing the illegal destruction of records, such as those covered by the JFK Act, which have "continuing value." 44 U.S.C. § 2905(a). The Archivist is required to "notify the head of a Federal agency of any actual, impending, or threatened unlawful . . . destruction of records in the custody of the agency that shall come to the Archivist's attention" and to "assist the head of the agency in initiating action through the Attorney General for recovery of [those] records." *Id.* If the head of the agency fails to initiate an action, the Archivist is required to do so himself. *See id.*

The Third Amended Complaint does not aver with specificity the records that were allegedly destroyed. It says only that "[t]he ARRB Final report reported CIA, FBI, Secret Service and other organizations intentionally destroyed documents, yet no action has been taken to address these violations of the Act." Dkt. 27 (TAC), ¶ 61(f). The footnote associated with that averment points to page 149 of the ARRB, which says that "in January 1995, the Secret Service destroyed presidential protection survey reports for some of President Kennedy's trips in the fall of 1963." *See* ARRB Final Report, at 149 (available at chapter-08.pdf).

NARA argues that Plaintiffs lack standing to pursue this claim because a favorable ruling would provide no redress for their injury. They have submitted evidence that the 1995 Secret Service records were irrevocably "pulped"—*i.e.*, turned into paper products—and cannot possibly be recovered, regardless of whether the Attorney General gets involved or not. *See* Dkt. 117, Barnes Decl. at ¶ 5–8; *see Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 148 (D.D.C. 2013) (suggesting that a Federal Records Act suit over documents which are "permanently unrecoverable" would not be justiciable).

Plaintiffs' response amounts to nothing more than speculation. They point to *other* records which were thought lost but later discovered, but they cannot rebut the declaration of Ms. Barnes nor point to anything about *these* records which suggest they are recoverable. Speculation is not enough to create standing. As other courts have recognized, there must be a "substantial likelihood that referral to the Attorney General will yield any fruit." *Cause of Action Inst. v. Pompeo*, 319 F.

United States District Court
Northern District of California

Supp. 3d 230, 236 (D.D.C. 2018).[5] Here, none exists, so the claim must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied, and NARA's motion for partial summary judgment is granted. Within 30 days, the parties are directed to file a status report indicating what issues remain to be resolved in the case.

**IT IS SO ORDERED**.

Dated: February 13, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

---

[5] Several cases discuss the jurisdictional problem as one of mootness rather than standing. *See, e.g.*, *Cause of Action*, 319 F. Supp. 3d at 236. However, mootness typically occurs when an intervening event robs the lawsuit of any consequence. Here, though the key jurisdictional fact was *discovered* after the lawsuit was initiated, it has existed since 1995. In that sense, jurisdiction over this claim was never proper, though that was not clear until some briefing and discovery occurred. Therefore, standing is the more appropriate jurisdictional doctrine to apply.

ORDERING DENYING PLAINTIFFS' MSJ AND GRANTING NARA'S PARTIAL MSJ
CASE NO. 22-cv-06176-RS